IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **DONALD G. DENKINGER, CHARLES J. HILGER, DENNIS HERMAN JANSSEN, and the CLARK BROS. TRANSFER, INC. EMPLOYEE STOCK OWNERSHIP PLAN AND TRUST,** | ) ) ) ) ) ) ) | **CASE NO. 8:05CV344** |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| **JAMES D. CLARK, GRANT J. DEYONGE, and SAIA MOTOR FREIGHTLINE, INC., a Louisiana corporation (successor in interest to CLARK BROS. TRANSFER, INC., a Nebraska corporation),** | ) ) ) ) ) ) ) ) | **MEMORANDUM AND ORDER** |
| Defendants, | ) ) | |
| **JAMES D. CLARK, GRANT J. DEYONGE, both individually and in the name and interest of the entity formerly known as CLARK BROS. TRANSFER, INC., a Nebraska corporation,** | ) ) ) ) ) ) ) | |
| Third-Party Plaintiffs, | ) ) | |
| vs. | ) ) | |
| **AMERITAS INVESTMENT CORP.,** | ) ) | |
| Third-Party Defendant. | ) | |

This matter is before the Court on Third-Party Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Filing No. 32). The matter has been fully briefed. For the reasons stated below, the motion will be denied.

## FACTS

Plaintiffs, Donald Denkinger, Charles Hilger, Dennis Herman Janssen, and the Clark Bros. Transfer, Inc. Employee Stock Ownership Plan and Trust (the "ESOP") (collectively "Plaintiffs"), filed a Complaint against Defendants, James Clark, Grant DeYonge, and Saia Motor Freightline, Inc., which was the successor in interest to Clark Bros. Transfer, Inc., on July 15, 2005. (Filing No. 1 ("Complaint")). Plaintiffs seek recovery under theories of breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1101 et seq. (*Id.*). Defendants James Clark and Grant DeYonge, both individually and in the name and interest of the entity formerly known as Clark Bros. Transfer Inc. (collectively "Third-Party Plaintiffs") moved the Court for leave, as Third-Party Plaintiffs, to implead Ameritas Investment Corp. ("Ameritas") as a Third-Party Defendant. (Filing No. 20). This motion was granted, and the Third-Party Plaintiffs filed a Third-Party Complaint against Ameritas, seeking recovery under theories of negligence, breach of contract, and negligent misrepresentation. (Filing No. 24 ("Third-Party Complaint").

The Third-Party Complaint alleges the following facts. Third-Party Plaintiffs, James Clark ("Clark") and Grant DeYonge ("DeYonge") are residents of Norfolk, Nebraska. (Third-Party Complaint ¶¶ 3,4). Both Clark and DeYonge served as Trustees and members of the Administrative Committee of the Clark Bros. Employee Stock Option Plan ("ESOP"). (*Id.*). Clark served as the President and Director and was the majority owner of the common stock of Clark Bros. Transfer Inc. ("Clark Bros."), a Nebraska corporation. (*Id.* ¶ 3). DeYonge was an Officer, Director and owner of shares of common stock of Clark Bros. (*Id.* ¶ 4). Clark and DeYonge sold their shares of Clark Bros. to Saia Motor

Freightline, Inc. ("Saia"), a Louisiana corporation, in February 2004, and Clark Bros. merged into Saia.  (*Id.* ¶¶ 5,6).

Clark and DeYonge, as fiduciaries, trustees, and members of the Administrative Committee and ESOP and as directors and officers of Clark Bros., hired Ameritas to provide valuation services to determine the fair market value of Clark Bros. stock held by the ESOP for an effective date of December 31, 2001, dated August 20, 2002 ("Ameritas Valuation").  (*Id.* ¶ 11).  Ameritas is a Nebraska corporation engaged in the business of performing services, including the valuation of businesses and valuation of stock held in employee stock options.  (*Id.* ¶ 7).  Ameritas determined that the value of the Clark Bros. stock as of December 31, 2001, was $805.00 per share.  (*Id.* ¶ 14).

The Complaint alleges that the employment of Denkinger, Hilger and Janssen terminated in 2002, and that the Plaintiffs exercised their rights under the ESOP and sold all of their shares of Clark Bros. stock to Clark Bros. at the Ameritas Valuation price of $805.00 per share. (Complaint ¶¶ 27,28,29).  The Complaint alleges that Clark sold Clark Bros. to Saia in February 2004, and that the sale reflected a per share value of Clark Bros. stock greater than $3,000.00 per share.  (*Id.*¶ 33).  The Complaint further alleges that the fair market value of each share of Clark Bros. stock held by the ESOP on December 31, 2001, was at least $2,000.00.  (*Id.* ¶ 37).  Plaintiffs filed the present action on July 15, 2005, claiming damages caused by Defendants' alleged breach of fiduciary duties under ERISA relating to the alleged undervaluation of Plaintiffs' stock.  (Complaint).

Clark and DeYonge allege that they did not at any time have any knowledge or belief that the Ameritas Valuation was inaccurate and that they "provided Ameritas with any and all potentially relevant information available to assist Ameritas in rendering a coherent

and supportable valuation." (Third-Party Complaint ¶ 16). The Third-Party Complaint alleges that Third-Party Plaintiffs were able and prepared to direct payment of the fair market value of the Clark Bros. shares held within the ESOP from Clark Bros. to the ESOP in the summer of 2002, but because Clark Bros. was sold and merged into Saia in 2004, the Third-Party Plaintiffs no longer have authority to direct such payment. (*Id.* at 21).

Third-Party Plaintiffs claim: 1) Ameritas failed to perform the valuation in accordance with the standards of those who hold themselves out as having special skills, knowledge, training, or experience; 2) Ameritas supplied Third-Party Plaintiffs with false information that was intended for their guidance; 3) Ameritas induced the Third-Party Plaintiffs reasonably to rely upon the information Ameritas supplied; and 4) Ameritas failed to exercise reasonable care and competency in supplying the information contained in the Ameritas Valuation. (*Id.* ¶ 20). Third-Party Plaintiffs claim Ameritas is liable under the theories of negligence, breach of contract, and negligent misrepresentation in connection with the Ameritas Valuation. (*Id.* ¶¶ 23-43). Third-Party Plaintiffs claim that as a result of Ameritas' negligence, Third-Party Plaintiffs sustained damages including: 1) payment of approximately $8,500.00 from Clark Bros. to Ameritas for its valuation services; 2) attorneys' fees, expert fees, and costs and expenses incurred in defending the present suit; 3) "general damages in any amount(s) for which Third-Party Plaintiffs are held liable in favor of Plaintiffs in the present action or any lesser amount recovered from Third-Party Plaintiffs determined to be the responsibility of Ameritas or a result of Ameritas's defective 2001 Valuation." (*Id.* ¶ 29).

Third-Party Defendant Ameritas moves to dismiss the Third-Party Complaint pursuant to Fed. R. Civ. P. 12(b)(6), alleging that the claims in the Third-Party Complaint

are preempted by ERISA and that "there are no viable causes of action for monetary damages which can be brought against a non-fiduciary such as Ameritas" because an ERISA cause of action against a non-fiduciary does not exist. (Filing No. 32 at 2).

## STANDARD OF REVIEW

In considering a motion to dismiss a complaint under Rule 12(b)(6), the court must assume all the facts alleged in the complaint are true; and must liberally construe the complaint in the light most favorable to the plaintiff. *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001); *Schmedding v. Tnemec Co.*, 187 F.3d 862, 864 (8th Cir. 1999). A Rule 12(b)(6) motion to dismiss should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle him to relief. *Young,* 244 F.3d at 627. Thus, as a practical matter, a dismissal under Rule 12(b)(6) should be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief. *Schmedding*, 187 F.3d at 864.

## DISCUSSION

There are two types of ERISA preemption: 1) "complete preemption" under § 502 of ERISA (*codified* at 29 U.S.C. § 1132); and 2) "express preemption" (or "conflict preemption") under § 514 of ERISA (*codified* at 29 U.S.C. § 1144). *Prudential Ins. Co. Of America v. Nat. Park Med. Ctr., Inc.*, 413 F.3d 897, 907 (8th Cir. 2005). Ameritas argues that hat the Third-Party Plaintiffs' claims against it are preempted by § 502(a) and/or § 514 of ERISA. (Filing No. 32 at 2); therefore, the Court will address each type of preemption separately.

5

**Complete Preemption**

Complete preemption occurs whenever Congress "so completely [preempts] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Prudential,* 413 F.3d at 907 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987)).  Under the doctrine of complete preemption, the preemptive force of "certain federal statutes is deemed so 'extraordinary' as to convert complaints purportedly based on the preempted state law into complaints stating federal claims from their inception." *Phipps v. F.D.I.C.*, 417 F.3d 1006, 1010 (8th Cir. 2005) (quoting *Krispin v. May Dep't Stores Co.*, 218 F.3d 919, 922 (8th Cir.2000)).   In *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004), the United States Supreme Court determined that a claim is completely preempted by ERISA when: 1) the plaintiff, at some point in time, could have brought his or her claim under ERISA § 502(a); and 2) there is no other independent legal duty that is implicated by a defendant's actions.

Here, Ameritas concedes that there is no provision in ERISA to recover plan benefits from a third-party who is not a plan fiduciary and that ERISA does not provide a cause of action for any other types of monetary damages against a non-fiduciary such as Ameritas.  (Filing No. 33 ("Support Brief") at 4).  However, Ameritas maintains that the Third-Party Plaintiffs' claim against Ameritas is completely preempted by ERISA because the claim "is at its core one for plan benefits."  (Filing No. 40 ("Reply Brief") at 3).

Third-Party Plaintiffs allege that their claims are brought under state laws of general applicability relating to the manner in which Ameritas performed its services, and not under ERISA § 502(a) as claims for plan benefits.  Third-Party Plaintiffs seek the following damages: 1) payment of approximately $8,500.00 from Clark Bros. to Ameritas for its

6

valuation services; 2) attorneys' fees, expert fees, and costs and expenses incurred in defending the present suit; 3) "general damages in any amount(s) for which Third-Party Plaintiffs are held liable in favor of Plaintiffs in the present action or any lesser amount recovered from Third-Party Plaintiffs determined to be the responsibility of Ameritas or a result of Ameritas' defective 2001 Valuation." (Third-Party Complaint ¶ 29).

Clearly, the first two categories of alleged damages above cannot be characterized as recovery of plan benefits. With respect to the third category of damages, if Plaintiffs succeed in their action against Third-Party Plaintiffs, the damages recoverable may be measured by the amount of plan benefits Plaintiffs were entitled to recover had the stock not been undervalued. However, measuring damages by the amount of a plan benefit does not necessarily equate to the recovery of a plan benefit. *See Penny/Ohlman/Nieman, Inc. V. Miami Valley Pension Corp.,* 399 F.3d 692, 702 (6th Cir. 2005) (stating "[n]ot every cause of action which mentions plan benefits, however, requires preemption. We have noted that reference to plan benefits may be 'simply a reference to specific, ascertainable damages [the plaintiff] claims to have suffered as a proximate result of [the defendant's conduct].'") (quoting *Wright v. Gen. Motors Corp.*, 262 F.3d 610, 615 (6th Cir.2001)). The Court agrees with this reasoning.

With respect to the second portion of the holding in *Aetna*, the Third-Party Complaint alleges Ameritas breached duties created by state law. The Third-Party Complaint alleges Ameritas's performance of services did not meet the applicable professional standard of care for performing valuation services. (Third-Party Complaint ¶ 20). The Third-Party Complaint alleges that Ameritas's action of performing valuation

7

services implicated legal duties that arose without regard to the existence of an ERISA plan, and both parties acknowledge that Ameritas is not an ERISA entity.

The Third-Party Plaintiffs could not bring the claims asserted in the Third-Party Complaint against Ameritas under ERISA § 502 because Ameritas is a third-party non-fiduciary, which did not owe fiduciary duties to the plan, and the Third-Party Plaintiffs are not seeking plan benefits.  The Third-Party Complaint alleges damages distinct from the recovery of plan benefits, and Ameritas's actions implicate legal duties independent of ERISA.  Finally, there is no showing that the Third-Party Plaintiffs' claims will require an interpretation of the ESOP plan.  Construing the Third-Party Complaint in the light most favorable to the Third-Party Plaintiffs, the Court finds that the Third-Party Plaintiffs' claims against Ameritas are not completely preempted under ERISA § 502.

**Express Preemption**

Although it is determined above that the Third-Party Plaintiffs' claims against Ameritas are not completely preempted under ERISA § 502, the claims may still be expressly preempted under ERISA § 514.  *Prudential*, 413 F.3d at 907.  ERISA § 514(a) states in pertinent part that "the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan. . . ."  29 U.S.C. § 1144(a) (emphasis added).  To determine whether a claim is expressly preempted under ERISA § 514, the United States Supreme Court has stated that courts "must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive."  *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645,

8

656 (1995). Additionally, when considering claims of preemption, courts are to start with the presumption that Congress did not intend to supplant state law. *Id.* at 655-56.

According to the Eighth Circuit Court of Appeals, a law relates to a covered ERISA plan for purposes of § 514(a) if the law: 1) makes a "reference to" an ERISA plan; or 2) has a "connection with" an ERISA plan. *Prudential Ins. Co. of America v. National Park Medical Center, Inc.*, 154 F.3d 812, 819 (8th Cir. 1998).

### 1. *"Reference to" an ERISA Plan*

A state law has a prohibited "reference to" ERISA plans when that law: 1) imposes requirements by reference to ERISA plans; 2) specifically exempts ERISA plans from a generally applicable statute; or 3) premises a cause of action on the existence of an ERISA plan. *Id.* at 822 (citations omitted). Claims of negligence, breach of contract, and negligent misrepresentation arise under laws of general applicability, which make no reference to ERISA plans and which function irrespective of the existence of any ERISA plan. *See Wilson,* 114 F.3d at 717. Furthermore, Ameritas does not contend that the claims relevant to this motion make "reference to" an ERISA plan for purposes of express preemption; instead, Ameritas argues that the claims have a "connection with" an ERISA plan. (Reply Brief at 5).

### 2. *"Connection with" an ERISA Plan*

To determine whether a state law has a sufficient "connection with" an ERISA plan such that it "relates to" to the ERISA plan for purposes of express preemption, the Eighth Circuit considers whether the state law: 1) negates an ERISA plan provision; 2) affects relations between primary ERISA entities; 3) has an impact on the structure of ERISA plans; 4) has an impact on the administration of ERISA plans; 5) has an economic impact

9

on ERISA plans; 6) whether preemption of the state law is consistent with other ERISA provisions; and 7) whether the state law is an exercise of traditional state power. *Shea v. Esensten*, 208 F.3d 712, 718 (8th Cir. 2000). No one factor is determinative; instead, "[t]he court must still look to the totality of the [state law's] impact on the plan - both how many of the factors favor preemption and how heavily each individual factor favors preemption are relevant." *Arkansas Blue Cross and Blue Shield v. St. Mary's Hosp., Inc*., 947 F.2d 1341, 1345 (8th Cir. 1991).

As to the first factor, there is no indication that allowing the Third-Party Plaintiffs to assert their claims against Ameritas, a third-party service provider, would negate any ERISA plan provision. The Third-Party Plaintiffs are seeking damages stemming from Ameritas's alleged negligence, breach of contract, and negligent misrepresentation relating to the performance of the Ameritas Valuation. The Third-Party Plaintiffs are not seeking plan benefits.

The Eighth Circuit treats the second and third factors above as identical. *In Home Health, Inc. v. Prudential Ins. Co. of America*, 101 F.3d 600, 605 (8th Cir. 1996). There is no indication that allowing the Third-Party Plaintiffs to assert their state law claims against Ameritas would affect the relations between primary ERISA entities or have an impact on the structure of the plan. The Eighth Circuit has stated that primary ERISA entities include "the employer, the plan, the plan fiduciaries, and the beneficiaries." *Wilson v. Zoellner*, 114 F.3d 713, 718 (8th Cir. 1997) (quoting *Arkansas Blue Cross & Blue Shield v. St. Mary's Hosp., Inc.*, 947 F.2d 1341, 1346 (8th Cir. 1991)). First, Ameritas is not a primary ERISA entity. Second, the Plaintiffs in this case are seeking damages from the Third-Party Plaintiffs resulting from an undervaluation of Plaintiffs' stock. The fiduciary duties that the

10

Third-Party Plaintiffs owed to the plan, plan participants or beneficiaries are not directly at issue in the Third-Party Plaintiffs' action against Ameritas; therefore, the Court will not address the merits of the Plaintiffs' claims. However, if the Plaintiffs succeed in their lawsuit against and are found to be entitled to damages from the Third-Party Plaintiffs, it appears unlikely that relations between the primary ERISA entities would be affected merely because the Third-Party Plaintiffs are also seeking damages from Ameritas, a non-fiduciary service provider, for alleged violations of state law concerning the manner in which Ameritas performed its valuation services.

In *In Home Health*, the Eighth Circuit determined that the fourth factor, which examines the state law's impact on the administration of the plan, did not support a finding of preemption when allowing the plaintiff to proceed with a state law claim "would not impose any additional administrative duties upon [an ERISA entity] or require a change in administrative procedures." 101 F.3d at 606. It seems unlikely that allowing the Third-Party Plaintiffs to bring their state law claims against Ameritas would impose additional or different administrative duties or procedures on the plan when the Third-Party Defendant, Ameritas, is not an ERISA entity. If anything, allowing the Third-Party Plaintiffs' claims would impose additional duties or changes in procedures upon service providers such as Ameritas.

As to the fifth factor, the economic impact on the plan, allowing the Third-Party Plaintiffs to proceed with their state law claims against Ameritas would not have a direct economic impact on the plan. The plan itself is a Plaintiff in this case and the Plaintiffs are seeking recovery from the trustees of the ESOP, and there is no indication that the plan would be required to indemnify the trustees. *See In Home Health*, 101 F.3d at 606 (stating

there was no demonstrable economic impact on an ERISA plan when there was no evidence that the plan would be required to indemnify the defendant ERISA entity, who had been sued for negligent misrepresentation). It is possible that there could be an indirect economic impact on the plan because third-party service providers may be less willing to perform services for ERISA entities or the service providers may charge higher fees to ERISA entities; however, this argument does not support preemption of the state law claims asserted by the Third-Party Plaintiffs. *See Wilson,* 114 F.3d at 719 (stating "[t]he possibility that insurance premiums will be higher or that insurance will be more difficult to obtain because independent agents will have less incentive to sell insurance to employers whose employee benefit plans will be governed by ERISA, does not provide a reason to preempt state laws that place liability on agents for fraud.")

The sixth factor, consistency of preemption with other ERISA provisions, does not support either preemption or nonpreemption. *See Wilson,* 114 F.3d at 719 (stating "[w]hile we do not believe that the preemption of [plaintiff's] suit is strongly supported by any specific provision of ERISA, we cannot say that preemption would be inconsistent with, or directly contrary to, any relevant provisions. Accordingly, this factor does not support either preemption or nonpreemption.")

Finally, the seventh factor, whether the state law is an exercise of traditional state power, does not support a finding of preemption. Negligence, breach of contract and negligent misrepresentation actions are exercises of traditional state power. *See Wilson,* 114 F.3d at 719-20 (stating "Missouri exercises a 'traditional state power' in adjudicating claims of negligent misrepresentation). Furthermore, the actions involve laws of general application that do not specifically target ERISA plans. Third-Party Defendant Ameritas

is not an ERISA entity, and the only connection that Ameritas's performance of services has to ERISA is the fact that the services happened to be performed for an ERISA entity. Certainly Nebraska has an interest in assuring that service providers such as Ameritas perform services in accordance with its laws, whether or not the service is performed for an ERISA entity.

Based on the factors set forth by the Eighth Circuit, the state law claims asserted by the Third-Party Plaintiffs do not have a sufficient "connection with" an ERISA plan such that the claims "relate to" the ERISA plan for purposes of express preemption. Ameritas is essentially arguing that it is shielded from liability in connection with the services it performed for Clark Bros. merely because the services were performed for an ERISA entity. Preemption of the Third-Party Plaintiffs' claims would not further Congress's stated goal in enacting ERISA, which is "to protect . . . the interests of participants in employee benefit plans and their beneficiaries. . . ." 29 U.S.C. § 1001(b). Construing the Third-Party Complaint in the light most favorable to the Third-Party Plaintiffs, the Third-Party Complaint alleges sufficient facts to preclude dismissal under Fed. R. Civ. P. 12(b)(6).

For the reasons stated above,

IT IS ORDERED:

Third-Party Defendant's Motion to Dismiss (Filing No. 32) is denied.

DATED this 19th day of May, 2006.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge